LOUIS HARTEAUX, Plaintiff in Error,

*vs.*

H. EUGENE EASTMAN, Defendant in Error.

ERROR TO THE BROWN CIRCUIT COURT.

Under the laws in force in the Territory of Wisconsin, in 1838, where a defendant died after judgment and before execution issued, it was not necessary to revive the judgment against the personal representatives before issuing execution.

The Statute of Michigan, in force in 1838, changed the rule of the common law, and rendered the revival of the judgment unnecessary to the issuing of execution, thereon though the execution might be postponed.

*Semble.* That courts favor strictly judicial sales after a great lapse of time, and where they appear to be fairly made and upon a valuable consideration paid.

This was ejectment by the defendant in error for a part of lot 28, in the north ward, in the city of Green Bay, and was tried in the Brown Circuit Court, January Term, 1857.

The plaintiff introduced record and documentary evidence, showing a title in fee in Daniel Whitney, traced through conveyances from " the heirs of Pierre Grignon, deceased," who derived their title from the U. S.; also a deed of warranty, duly executed and recorded, from said Daniel Whitney and wife to Joseph Dickinson, dated Dec. 10th, 1834, for a part of said lot embracing the premises in question. The plaintiff then proved that Joseph Dickinson died June 7th, 1838, leaving a widow, Mrs. Emily Dickinson and two children, Jane and Emily; that Jane died in the fall of 1838, and that Emily, who became the wife of Lieut. Benj. Forsyth, died in July, 1854, and left no children. That at the time of said Joseph Dickinson's death, Mrs. Dickinson and her children resided on the property in question; and further, that said Benj. Forsyth, husband of the said Emily, (daughter of Joseph Dickinson,) was living, and that he, said Forsyth, resided in Chicago at

the time of the trial.    The plaintiff then produced a quit-claim deed from Emily Root, (formerly the wife of Joseph Dickinson) and her present husband, dated 13th May, 1850, for the premises in question.

The defendant below proposed to show that the property in question was sold to Daniel Whitney at a sheriff's sale, under an execution upon a judgment of the district court of Brown county, Wisconsin Territory, rendered against the said Joseph Dickinson in his life-time, and that the defendant claimed under a lease from said Whitney; and thereupon the said defendant, by his counsel, introduced one of the judgment record Books of said district court, showing that at the May Term of said district court, held on the 28th day of May, A. D. 1838, a judgment was rendered in said district court against the said Joseph Dickinson, in an action between David A. Comstock and Robert W. Andrews, plaintiffs against the said Joseph Dickinson, defendant, in the sum of $393,18 damages, and $3,31 1-4 costs.

The said defendant then offered in evidence a writ of execution, issued out of said district court upon the said judgment, on the 15th day of June, 1839, which said execution is in the words and figures following, to-wit:

[L. S.]  " TERRITORY OF WISCONSIN, ⎱ ss.
              County of Brown,      ⎰

*The* UNITED STATES OF AMERICA *to the Sheriff of the County aforesaid, Greeting :*

WHEREAS, judgment against Joseph Dickinson was recovered by David A. Comstock and Robert W. Andrews, in the District Court of the United States, for the county of Brown, at the May Term, one thousand eight hundred and thirty-eight, at the suit of the said David A. Comstock and Robert W. Andrews aforesaid, for the sum of three hundred ninety-three dollars and 18 cents damages, and three 93-100 costs of suit, by the said plaintiff in this behalf expended, whereof execution remains.

These are therefore in the name of the United States of America, to command you that you levy distress upon the

goods and chattels of the said Joseph Dickinson as aforesaid, excepting such as the law exempts, and, the want thereof, his lands and tenements, and make sale thereof according to law in such cases made and provided, to the amount of said sums, and of the same so made make due return within sixty days.

Hereof fail not. Witness the Hon. Andrew G. Miller, judge of our said court, this 15th day of June, A. D. 1839.

GARDNER CHILDS, Clerk.

Nov. 27, 1839. Recd. of Chas. Tullar, Sheriff, satisfaction in full of this execution. B. SHACKELFORD."

Endorsed with the title of the cause, date of issue, June 15, 1839, the amount of damages $393,18, and costs $3,93, interest from 30th May, 1838, and the return Nov. 28, 1839. at 9 o'clock, A. M., satisfied in full, subscribed by Charles Tullar, sheriff.

The counsel for the said plaintiff below, objected to the said execution, because, by its face, it purported to be issued after the death of the defendant named therein as proven; because the writ was issued more than one year after the death of the defendant, and because the execution was void on its face; and for other reasons. And thereupon the circuit judge, who tried the cause, decided that the execution was void, and rejected the evidence; to which the said defendant's counsel excepted.

The said defendant's counsel then offered to prove by the administrator of Joseph Dickinson, deceased, that the property in question was purchased at the said sheriff's sale by Daniel Whitney, at the suggestion of the administrator, for the benefit of the estate—which was objected to for immateriality—the objection was sustained, and the defendant excepted.

The defendant's counsel also offered in evidence a certificate of sale by the sheriff, under said execution, together with the sheriff's deed of said property to the said Daniel Whitney—to which the said plaintiff's counsel objected, because the regularity of previous proceedings had not been shown—the court sustained the objection, and rejected the evidence—to which ruling and decision the defendant excepted.

The counsel for the said defendant then prayed the said cir-

cuit judge to charge the jury "that if they should find that Emily Forsyth, heir at law of Joseph Dickinson, deceased, left a husband at her decease, and now alive, he is entitled to the possession of the premises, as tenant by the curtesy, and that the plaintiff in this suit cannot recover until such estate, by the curtesy, has expired; which instruction the said court then and there refused to give, but instructed the jury that there could be no estate by the curtesy in Benj. Forsyth, under the provisions of section 30, ch. 62, of the Revised Statutes of Wisconsin, without proof that the husband and wife were seized in fact, (*pedis possessio*,) of the premises, during coverture, but that even if any such estate by the curtesy might have existed under that statute, the statute was by implication repealed by the act of February 1, 1850, entitled "An act to provide for the protection of married women in the enjoyment of their property;" to which instruction the defendant excepted. The jury found for the plaintiff, and the judgment of the court was entered thereon.

*John C. Neville and E. H. Ellis*, for the plaintiff in error.

I. The circuit court erred in deciding that the execution was void; it was not void, but voidable only; and the purchaser at the sale under it acquired a good title. *Speer vs. Sample*, 4 Watts, 367; Laws of Michigan, (Ed. of 1833), 346, 424, 6, 8; *Whiting vs. Bank of U. S.*, 13 Peters, 7. *Doe vs. Heath*, 7 Blackf., 156; Laws of Wis. Ter. (1836) 7, § 12; *Shelton vs. Hamilton*, 23 Miss. —; 1 Cush., 496; N. Y. Dig. 1852, p. 287, § 63.

II. It was insisted upon the argument in the court below that the execution was void because there was no evidence that a *scire facias* had been issued against the administrator or the heirs. The objection to the evidence, however, was not made for this reason, but on the ground that the execution was issued after the defendant's death.

The plaintiff in error contends that even if doubt could be entertained of the legality of the execution, because issued after the defendant's death, yet it may well be presumed in view of

the lapse of time and other circumstances, that all necessary steps were taken before the execution issued, according to the rule, *omnia presumuntur rite esse acta*, &c. The bill of exceptions shows, moreover, that the only papers found in the case were a note, precipe, and execution—from which it is evident that some of the papers were lost. The purchaser could not therefore produce the *scire facias*, and the court should have presumed that all was done which ought to have been done, so as, if possible, to protect the purchaser. Starkie on Evidence, 4th Ed., 757.

III. The circuit court erred in rejecting the evidence offered by the plaintiff in error to prove that the property in question tion was purchased at the sheriff's sale under said execution at the suggestion of the administrator for the benefit of the estate. Judgment defendants, their legal representatives or those claiming under them, ought not to be permitted to take advantage of any error or omission in proceedings to enforce judgments, when they have received the purchaser's money for their property, and where the taking such advantage would word injustice to the purchaser or those claiming under him. *Speer vs. Sample* 4 Watt's, 367, ; *McPherson vs. Cuncliffe*, 11 Serg. and Rawle 429. 438–9 ; *Thompson vs. Tolmie*, 2 Peters' U. S.; *Sup. Ct. Rep.*, 168 and 9 ; *Voorhies vs. Bank of U. S.*, 10 Peters, 475 ; *Major vs. Deer*, 4 J. J. Marshall, 588. The circuit court also erred in rejecting the sheriff's certificate of sale and deed—they were good evidence under the statute. Laws of Mich., 1833, pages 427, 429; R. S. Wis. Ter., 1839. 234.

IV. But there is another and very important point:

It was proved on the trial that Emily, daughter of Joseph Dickinson, deceased, through whom the defendant in error claims title, was married; that she died in July, 1854, and that her husband, Lieut. Benj. Forsyth, was living at the time of the trial. It was also proved that the family of Joseph Dickinson (including the said Emily) resided on the property in question at the time of Joseph Dickinson's death. If Emily Forsyth was entitled to the property, as heir at law of Joseph

Dickinson, the foregoing facts show that there was an estate by the curtesy in her husband, which constitutes an outstanding title in bar of the action of ejectment.

The circuit court erred in charging the jury that there could be no estate by the curtesy in Benjamin Forsyth under the provisions of sec. 30, chap. 62. of the Revised Statutes of Wisconsin, without proof that the husband and wife were seized in fact of the premises during coverture; but that even if any such estate by the curtesy might have existed under that statute, the statute was by implication repealed by the act of February 1, 1850, entited "An Act to provide for the protection of married women in the enjoyment of their own property."

1st. *Actual seizin* is not necessary to entitle the husband to the lands as tenant by the curtesy. *Title to the land in the wife,* and right of seizin, or seizin in law, are sufficient. *Bush vs. Brady,* 4 Day, 298; *Stoolfoos vs. Jenkins,* 8 S. & R., 175; *Kline vs. Beebee,* 6 Conn., 494, 497; Bouvier and Burrill's Law Dic. Seizin; Rev. Stat., 314, §§ 7, 8; Id., 336.

The reason why actual seizin was required at common law was that the husband must have begotten issue that might be heir to the wife. At common law the heir could only take lands of which the ancestor was seized in fact. 2 Bl. Com., 128; Bright on Hus. and Wife, 1, 116, 117. The American law of descent ,and our statutes on curtesy, dispense with both these requisites. . Rev. Stat., 336; ld., 314, 340.

*James H. Howe* for the defendant in error.

1st. The execution having issued after the death of the defendant, was void. *Center vs. Billinghurst,* 1 Cow., 33; *Stymet vs. Brooks,* 10 Wend., 207; I Burrill's Pr. 287.

2d. A sale under a void execution passes no title to the purchaser.

3d. Upon the death of Joseph Dickinson the premises in question descended to his heirs; new parties became interested, who could not be divested without their day in court. This could be done by *scire facias,* in a manner prescribed by law.

It was contended upon the trial, that the statute in force when the execution was issued, (Laws of Michigan, 1827, p. 240, § 15,) allowed an execution to be issued after the death of a defendant, because it provided that the remedy of a party should not be suspended. This statute is not essentially different from our present one, Rev. Stat. Ch. 102, § 66. The statute cannot have such an interpretation, because it does suspend all remedy for one year; the intention of the legislature by that enactment, was to repeal that rule of the common law by which, in certain cases, heirs took the estate of an ancestor free from any claim by his creditors; it is intended to leave the remedy by judgment and execution against such property in full force after revivor against heirs and personal representatives. The English rule that a *fi. fa.* might issue after the death of a defendant, provided that it bore test before, cannot apply here. A term of the court as fixed by law, must intervene during the year after such death, and an execution could only have relation back by its test to the *last* term. Besides, the execution in this case is not tested of any term.

II. Emily Dickinson married Forsyth, and died in 1854. Is Forsyth entitled to the possession of these premises as tenant by the curtesy ?

1. A defence of a term outstanding, made by a person not beneficially interested therein, is not looked upon with favor by courts; and the party seeking to avail himself of such a defence must show affirmatively the facts which entitle him to it.

2. The case shows that the premises in question consist of a lot in the city of Green Bay, upon which, in 1838, Dickinson and his family resided. The property had since been held by Whitney, under sheriff's deed, and by his lessees *adversely* to Dickinson's heirs; not only were the last named persons never *seized in fact* after such deed, but they were actually *disseized.*

3. One of the four essential requisites to an estate by Curtesy, at common law, was an actual seizin; not a bare right to possession but a seizin in deed. 2 Black. Com. 127. This rule

Harteaux vs. Eastman.

is still in force in England and in some of the American States. *Neely vs. Butler*, 10 B. Mon. 48.

In other States and in the Supreme Court of U. S. the rule has been somewhat relaxed; the courts holding that in waste, uncultivated lands, *not held adversely*, actual seizin was not necessary. *Jackson vs. Sellick*, 8 J. R. 262; *Davis vs. Mason*, 1 Peters, 505; 8 Paige, 643; 4 Kent's Com. 29, and cases cited.

In *Jackson vs. Johnson*, 1 Cow. 98, and in *Adair vs. Lott*, 3 Hill, 182, the Supreme Court of New York relax the English rule still further, by holding that no possession or seizin in deed is ever necessary, except in case of heirs or devisees *who have never entered*, an exception which takes the case at bar out of the operation of their rule, assuming it to be correct. It will be noticed that in none of these cases cited in which curtesy was allowed were the premises held adversely—and it is believed that a case cannot be found, where this estate has been sustained in the husband, when the premises in question were cultivated and improved, and held adversely during the whole time of coverture. See also Hilliard on R. property; Tit. Curtesy, p. 73.

*By the Court*, COLE, J. It appears in this case, that the plaintiff below and defendant in error, for the purpose of establishing his title to the disputed premises, offered in evidence a warrantee deed from Daniel Whitney to Joseph Dickinson, dated December 10th, 1834, conveying the premises described in the declaration. We likewise further showed that Dickinson died June 7th, 1838, leaving a widow, and two children—James and Emily—the former of whom died in the fall of 1838, and the latter, who became the wife of Lieut. Forsyth, died in July, 1854, and left no children; that at the time of Dickinson's death, his wife and children resided upon the property, and that Forsyth, the husband of Emily, was living at the time

of trial. The plaintiff claimed the premises by virtue of a quit-claim deed from Emily Root (formerly the wife of Dickinson), and her husband, dated May 13th, 1856. To defeat a recovery, the defendant below and plaintiff in error, proposed to show that the property in question was sold to Daniel Whitney, at sheriff's sale, under an execution upon a judgment of the district court of Brown county, Wis. Ter., rendered against Joseph Dickinson in his life time, and that the defendant claimed under a lease from Whitney. The judgment record book of the district court was thereupon introduced, showing that at the May term of said district court, held on the 28th day of May, 1838, a judgment was rendered in that court against Joseph Dickinson in favor of David A. Comstock and Robert W. Andrews, in the sum of $393.18 and costs. He then offered in evidence a writ of execution issued out of said district court upon said judgment on the 15th day of June, 1839, under which the sale to Whitney was made. To the introduction of the writ of execution in evidence the plaintiff below objected; because by its face it purported to be issued after the death of the defendant named therein as proved; because it was issued more than one year after the death of the defendant; and because the execution was void on its face, and for other reasons. The court held the execution void, and rejected the evidence, and the defendant excepted. The defendant further offered in evidence a certificate of sale by the sheriff under said execution, together with the sheriff's deed of the property to Whitney; which evidence was also ruled out and exceptions taken.

Inasmuch as we consider the ruling of the circuit court rejecting the execution, certificate of sale, and sheriff's deed, when offered in evidence, erroneous, we shall confine ourselves in our decision to a consideration of that question alone, and express no opinion upon the other interesting and important points raised in the case. Was, then, the decision of the circuit court, rejecting the evidence offered, correct and proper?

It is understood that the principal ground upon which the

circuit court relied in ruling on the evidence, was, that it held that the execution was absolutely void, and that the purchaser at the sheriff's sale acquired no title to the land, for the reason that the execution was issued after the death of the defendant, Dickinson, upon a judgment obtained against him in his life time, without its appearing that the judgment had been previously revived against Dickinson's administrators or executors by *scire facias*. We are then to consider whether it was indispensably necessary, under the laws in force in the Territory in 1838, (at the time the judgment against Dickinson was obtained), when a judgment had been recovered in a court of record in the Territory if the defendant died before an execution issued, that the judgment should be revived by *scire facias*, before an execution could properly issue. The law then in force regulating the practice of issuing execution upon judgments, and which we think determines this whole matter, was the statute of Michigan. The 15th section of the act approved April 12th, 1827, and found on page 428 of the edition of the Michigan statutes before me, is the provision that has the most direct bearing upon the question under consideration, and reads as follows: "That when any judg- "ment hath been, or shall be recovered or acknowledged, or " damages adjudged, in any court of record in this territory, " if the defendant happens to die before execution shall have "been issued thereon, *the remedy of the person in whose favor* " *the said judgment shall have been rendered or acknowledged* " *shall not be suspended by reason thereof*, nor by reason of the "non-age of any heir or heirs of any such defendant; but no " execution shall be issued on such judgment, until one year " after the death of such defendant."

We have not been referred to any judicial construction of this statute, and we know of none. We must therefore put our own interpretation upon it. In the absence of this statute, it probably would not be contended that where a sole defendant dies after final judgment and before execution, a *scire facias* need not be issued to revive the judgment against the

administrators or executors, before an execution could regularly and properly issue; but we believe the above provision changes the rule in this respect, and renders it unnecessary. For the statute expressly declares that in such a case the *remedy* of the person in whose favor the judgment shall have been rendered, shall not be suspended [by reason of the death of the defendant. The remedy here spoken of, we are of the opinion, refers to the means the plaintiff might employ to enforce his rights, embracing therein the execution, the life and end of the law. Without this statute, as already observed, the remedy would, to a certain extent, have been suspended or modified, and the party plaintiff would not have been entitled to his execution until he had instituted an additional proceeding, and revised the judgment. But the statute provides that the death of the defendant in the execution anterior to suing it out, should in no wise affect the proceedings, or delay the plaintiff in the prosecution of his rights, except as therein afterwards specified; that is, that the execution should not issue until the expiration of a year from the death of the defendant. This provision we consider essentially different from the various enactments of our present statute upon the subject.

Conceding, however, that we are wrong in our construction of the statute, and assuming that it was a necessary prerequisite to revive the judgment by *scire facias* before the execution could properly issue, then after the great lapse of time that has intervened since the sale, and in consideration of the fact that only a part of the papers relating to the suit can be found, we deem it eminently a proper case for the application of the familiar rule, *omnia praesumuntur rite esse acta*; that everything necessary to render the issuing of the execution regular, will be presumed to have been rightly and duly performed, until the contrary is shown.

Some objections were taken to the form of the execution, and the return day thereof; but these objections, even if well taken, could not render it void. At most, they were irregu-

Harteaux vs. Eastman.

larities for which, perhaps, the execution might have been set aside before sale. But a sale having taken place under it, the lands having been bought in good faith by Whitney, and, for aught that appears, for a valuable and sufficient consideration, the sale should now, if possible, be upheld. The judgment of the court below is reversed with costs, and a new trial ordered.