## STATE ex rel. HAWES vs. PIERCE.

ELECTIONS. (1, 2) *What ballots to be counted. Repetition of candidate's name.* (5) *Polls opened in town, after such town has been vacated. Votes not to be counted.*

QUO WARRANTO. (3) *Evidence as to rejection by canvassers of lawful votes.* (5) *Rejection by court of votes cast at unauthorized polls.* (6) *Objects of the action, and powers of the court therein. Judgment after expiration of the term of office in dispute.*

STATUTES. (4) *Directory and mandatory provisions.*

1. Repetitions of the name of a candidate (in connection with the name of the office for which he is a candidate) *on a single piece of paper*, do not vitiate the vote, but it should be counted as a *single* ballot.

2. Such a case is not within the provisions of sec. 51, ch. 7, R. S. (Tay. Stats., 226, § 72), which declares that "*if two or more ballots* shall be found so *folded together* as to present the appearance of one ballot," they shall be destroyed, if a majority of the board are of the opinion "that the ballots thus folded together were voted by one elector."

3. In an action to try title to office, it is error to rule out evidence which shows that ballots rejected and destroyed by the inspectors were of such a character that the law did not authorize their rejection.

4. Where an order of the county board of supervisors vacating a town and attaching its territory to another town, was *passed* in due form, pursuant to the power conferred upon the board by sec. 28, ch. 13, R. S. (Tay. Stats., 208, § 36), and was *published* as prescribed by sec. 30 of said chapter (Tay. Stats., 300, § 38), it had the force of law; and the fact that the clerk of the board did not order a number of the papers containing such publication, sufficient to distribute one to each of the town clerks of the county, and did not so distribute them, as provided by sec. 31 of the same chapter (Tay. Stats., 300, § 39), does not destroy the legal effect of such order. The provisions of said sec. 31 are held to be only *directory*, while that requiring *publication* (which is also required by the state constitution before any public law can take effect) is *mandatory*.

5. Where a town had been duly vacated, but the electors residing within the territory of such former town, without authority of law, opened a poll and deposited, received, canvassed and returned votes at an election for county officers: *Held*, that such votes should have been rejected by the county canvassers, and, having been received by them, must be rejected by the court, upon due proof made, in *quo warranto*.

6. Under the statutes of this state, the object of the action in the nature of a *quo warranto* is not merely to oust the incumbent, but the right of the person lawfully entitled to the office may be therein tried and adjudged; if the defendant is found guilty of an intrusion, a fine may be imposed, and costs recovered; and if the relator is found entitled to the office, he may recover by action the damages which he has sustained by reason of defendant's usurpation. In a case where the action was commenced during the term for which the relator claimed: *Held*, that it might be prosecuted to final judgment *after the expiration* of such term.

APPEAL from the Circuit Court for *Pierce* County.

Action in the nature of *quo warranto*, to determine the title to the office of county judge. It appeared from the pleadings and evidence that for three years prior to April 6, 1869, the

relator had been county judge of Pierce county, and that his term of office continued until January 1, 1870; that on April 6, 1869, an election was held for that office, in which the rela-tor and respondent were opposing candidates, and that, accord-ing to the official canvass of such election, 737 votes were cast for the respondent, and 734 for the relator. The complaint alleges that in addition to the votes so returned, two legal votes were cast for the relator in the first ward of the city of Prescott, which were not counted or returned. The facts in respect to these two votes are sufficiently stated in the opinion of the court. It further appeared from the pleadings and evidence that on the 2d of February, 1869, an order was made by the county board of supervisors of Pierce county, by which it was ordered that the township previously known as the town of Isabelle, should be vacated, and that the territory before known as the town of Isabelle should be attached to the town of Hartland; that this order was published in the Prescott Journal, but that no official notice thereof was given to the town clerk of Isabelle; that on the day of said election the polls were kept open as usual, inspectors and clerks of election were present, and a full set of town officers were elected in said town ; that at such election fifteen votes were cast for the respondent for county judge, and none were cast for the relator; and that said fifteen votes were returned to the county canvassers, and by them counted for the respond-ent; that both relator and respondent qualified for said office, and the respondent received the certificate of election; but that the relator retained possession of the books and records of said office, and acted as county judge until March 20, 1872, when the office and records were given up to the respondent. A large amount of testimony was given to sustain allegations in both the complaint and answer, in regard to other votes claimed to be illegal; but it is unnecessary to state the nature of this testimony.

The court below held, as matters of law, that the town of Isa-

belle had not been vacated, but was at that time a town, and the election held therein was legal, and that the fifteen votes were legal, and should be counted for respondent.

Judgment for the respondent; from which this appeal was taken.

*White & Button*, for appellant:

1. The deposition as to the two ballots rejected in the first ward of Prescott, should have been received (Tay. Stats., 221, § 50), and if the form of words used intelligibly names a candidate for a given office, however verbose, it must be counted. *State ex rel. v. Elwood*, 12 Wis., 558–9; *People v. Saxton*, 22 N. Y., 311; *People v. Holden*, 28 Cal., 135–6. In order to make these votes objectionable under Tay. Stats., 227, § 72, there must be more than one piece of paper. Tay. Stats., 221, §§ 50, 52; 28 Cal., 135; *People v. Cook*, 14 Barb., 301–2. 2. The votes from Isabelle should have been rejected. The passage of the order by the board of supervisors was a legislative act. *People v. Carpenter*, 24 N. Y., 89, 92. The legislature may confer upon county boards legislative powers. Art. IV, sec. 22, constitution. That power, embracing union of towns, is conferred by §§ 36 and 37, Tay. Stats., 298, and the board's action thereon has all the force of positive law. 8 N. Y., 474. The enactment of a legislative body takes effect from its date, unless a time is fixed by the act, or there be some constitutional restriction. 1 Kent (7th ed.), 501. The only restriction in this state relates to general laws; and this is local. R. S. 1849, ch. 10, sec. 28; R. S. 1858, ch. 13, sec. 29; Gen. Laws of 1868, chaps. 92, 164, 170; *Town of Depere v. Bellevue*, 31 Wis., 124; *Dean v. Borschenius*, 30 id., 246; *Smith v. Levinus*, 8 N. Y., 474; 28 Wis., 68. Being local, publication is not necessary to give it effect, any more than local laws passed by the legislature. The publication adds nothing to the effect of the law. Tay. Stats., 199, § 52. The publication and distribution required by Tay. Stats., 300, §§ 38, 39, are not made acts precedent to the taking effect of the order. So that, upon the face of the

pleadings, the attaching of Isabelle to·Hartland by an effective order stands admitted, and the fifteen votes should have been rejected. *Jones vs. Gilman*, 14 Wis., 452.

*Glover & Clinton* and *L. P. Wetherby* (with *George Clinton*, of counsel), for respondent :

1. The two double ballots cast for relator in the first ward of Prescott, were properly rejected. There must be certainty in the *mode of voting*. To this end there are laws prescribing when, where and in what manner votes shall be cast. R. S., ch. 7, secs. 51, 29. If the court ingrafts exceptions upon these laws, it assumes legislative functions, and establishes dangerous precedents. The name and office together are the elements of the ballot, and consequently if the same person is named twice on the same slip, that slip is two ballots, within the meaning of the statutes. Inspectors of election are merely ministerial officers. *People v. Cook*, 4 Seld., 86; *People v. Pease*, 27 N. Y., 45. 2. The fifteen votes cast in the town of·Isabelle for the respondent, were legally cast and properly allowed. *State v. Button*, 25 Wis., 109.

DIXON C. J. The statute prescribing the mode of proceeding and the duties of the inspectors in the canvass of votes after the polls are closed (R. S., ch. 7, sec. 51; 1 Tay. Stats., 226, § 72), declares that "if two or more ballots shall be found so folded together as to present the appearance of one ballot, they shall be laid aside until the count of the ballot is completed; and if, upon a comparison of the count and the appearance of such ballots, a majority of the board shall be of opinion that the ballots thus folded together were voted by one elector, they shall be destroyed." Two ballots cast for the relator in the first ward of the city of Prescott, having printed thereon, " For County Judge, *William Hawes*," "For County Judge, *William Hawes*," were laid aside and not counted for the relator, but were destroyed by the board of inspectors. Both names were upon the same slip of paper, not cut apart

or attempted to be, and each slip, with the names printed thereon, was deposited by the voter as a single ballot. Evidence to prove these facts — the depositions of two witnesses, which did establish them — was offered and excluded, on the ground that the statute above quoted authorized the board of inspectors to reject the ballots, and that such rejection was proper. We are of opinion that the rejection by the board was unauthorized, and that it was error for the court to exclude the depositions. Each ballot so rejected was a single ballot, and not two ballots "folded together," within the meaning and intent of the statute    The object of the statute is apparent, which was to prevent the deposit by one voter of two or more separate ballots so folded together as to present the appearance of a single ballot. There was no chance for the practice of this kind of fraud or deception by the ballots in question. It was not possible to mistake the will or intention of the voters, or to suppose that they designed to have their ballots each counted twice. It was obvious on the face of the ballot that the voter intended to have it counted but once, or as but one vote, and that the repetition of the name was by mere oversight or mistake. It has been frequently held that such repetitions upon a single piece of paper or ballot do not vitiate, but that it should be counted as a single ballot. Cushing's Law and Practice, p. 40, § 106; *People v. Holden*, 28 Cal., 123. And see, also, *People v. Saxton*, 22 N. Y., 309; *State v. Elwood*, 12 Wis., 551. The two ballots so thrown out should have been counted for the relator, and the proofs offered by him should have been received.

The town of Isabelle was lawfully vacated by order of the county board of supervisors, and the territory thereof attached to and made a part of the town of Hartland. The order was passed in due form of law, pursuant to the powers conferred upon the board by sec. 28, ch. 13, R. S. (1 Tay. Stats., 293, § 36), and was published in the manner prescribed by sec. 30 of the same statute (1 Tay. Stats., 300, § 38). The only objec-

tion taken to the order was, that the clerk of the board of supervisors did not order a number of the papers containing such publication, sufficient to distribute one to each of the town clerks of the county, and did not so distribute them, as provided by sec. 31 of the statute (Tay. Stats., 300, § 39). The orders of the supervisors thus passed have all the force of positive law. They are in fact laws of the same character and effect as like acts passed by the legislature of the state, or as if the same acts had been so passed. As a public or general law, the order vacating the town could not be in force under the constitution until published; hence the publication required by the statute could not be dispensed with. That section of the statute may be regarded as mandatory, because the constitution itself commands the act to be done, or declares that the law shall not be in force until it is done. It may be considered mandatory by force of the constitutional requirement. But the order of the board of supervisors vacating the town was duly published; and the question now is, whether its operation was suspended, or it fails to take effect, because the clerk neglected to procure a sufficient number of the newspapers containing it, so as to distribute one to the town clerk of each town in his county, and did not make such distribution.

The statute directing the clerk to make distribution is in these words: "Such clerk shall order a number of the papers containing any such orders or determinations, sufficient to distribute one to each of the town clerks of his county, and so distribute them; and such clerks shall, on receipt thereof, file the same in their respective offices." It will be observed that the statute does not make the force or operation of the orders and determinations of the supervisors dependent upon the obtaining and transmission of such newspapers. It contains no express words to that effect, but only in general terms imposes the duty upon the clerk. It is consistent with the language, and with what may be supposed to have been the intention of

the legislature and its object in interposing the requirement, to say that the statute is merely directory. The object of the legislature appears to have been to furnish means and facilities for acquiring speedy and authentic knowledge and information by all the inhabitants of the county, of the orders and determinations of the supervisors. It was to provide permanent means and facilities of the kind, and at places easily accessible to all the inhabitants. The distribution by the clerk of the board of supervisors is like the distribution by the secretary of state, in book form, of the laws, acts and resolutions passed by the legislature, and apparently for the same purpose. The newspapers containing the orders of the supervisors, or the laws passed by them, and which are filed and preserved in the offices of the clerks of the several towns, take the place, so to speak, in this peculiar mode of legislation, of the books of laws enacted by the legislature, where that is the mode, and which are published and distributed under the direction of the secretary of state. Such appears to be the intent and purpose of the provision; and if it is, then it is obvious that the failure of the clerk to procure and distribute the papers could no more defeat the order of the supervisors, or the law enacted by them, than could the failure of the secretary of state to print and distribute the books defeat a law enacted by the legislature, which had been duly published in a newspaper so as to take effect under the constitution. This view leads to the conclusion that the statute is directory, and that the legislature so intended; and such is the opinion of this court. It is not to be supposed, without some provision clearly indicating it, that the legislature intended that the action of the board of supervisors should be rendered wholly inoperative and void by such subsequent omission or neglect on the part of their clerk, and not on the part of their clerk alone, but on the part of any one of the town clerks of any of the several towns in the county. It will be seen that, if the statute is held to be mandatory with respect to the clerk of the board of supervisors, it

must likewise be so held with respect to the duty imposed upon the several clerks of the towns; and that if any one of them failed to receive the newspaper, or failed or neglected to file it in his office, it would be equally fatal to the order or action of the board of supervisors. It is impossible to believe that the legislature ever intended to clothe any one of these subordinate officers with power thus to veto or defeat the action of the board.

Our conclusion therefore is, that there was no town of Isabelle at the time of the election in question, and that the voters residing in the territory formerly constituting a town by that name had no authority to open a poll, and deposit, receive, canvass or return votes at such election. The election so held was irregular and void, and the acceptance of the return and canvass of the votes as from a town of that name, by the county board of canvassers, was unauthorized. The number of votes so counted by the county canvassers, and all purporting to have been cast for the defendant, and which resulted in the giving to him of the certificate of election, was fifteen. Strike out those fifteen votes, and add to the other votes lawfully given for the plaintiff the two votes improperly rejected in the first ward of the city of Prescott, and the plaintiff received a clear majority of all the votes cast in the county, even if we concede the illegality of the several votes given for him which the defendant claims to have been illegal. It is unnecessary to consider the questions of the legality of the last votes, or of any others, and we pass them unnoticed.

A question has presented itself to the mind of the court as to the right to further prosecute this action, and whether any judgment can be pronounced in it after the expiration of the term of office for which the relator was elected, and during which the defendant usurped and unlawfully held. Under the statute, the object of the action is not merely to oust the incumbent, but the right of the person lawfully entitled to the office may also be tried and adjudged; and if the defendant is

found guilty of the intrusion, a fine may be imposed and costs recovered. It is also provided, if the relator is found entitled to the office, that he may recover by action the damages which he may have sustained by reason of the usurpation of the defendant. R. S., ch. 160, secs. 9, 10, 13, 15; 2 Tay. Stats., 1810–12, §§ 13, 16, 19, 21. It has been held in several well considered cases, that the resignation of an officer, or the expiration of his term, will not prevent an information to test his title, if commenced prior thereto, from being afterward prosecuted to final judgment. *The People v. Loomis*, 8 Wend., 396; *The People v. Hartwell*, 12 Mich., 508; *Hunter v. Chandler*, 45 Mo., 452; *Commonwealth v. Smith*, 45 Pa. St., 59. In the last named case it was held that the right of officers *de facto* could only be tested by *quo warranto* brought in the lifetime of their office, and that the title to a past and defunct office could not be tried in a proceeding instituted after the term had expired. And in *Hunter v. Chandler*, it was held that no action could be maintained by the person lawfully entitled to an office, against one who had usurped and intruded into it, for the recovery of the fees and emoluments which such intruder had received, until the person so entitled had first established his right in the proceeding by *quo warranto*, although this was admitted to be contrary to the general current of the authorities.

This action was instituted during the lifetime of the office claimed by the relator, and into which it is charged the defendant had intruded, and hence there is no difficulty in the way of its being prosecuted to final judgment, notwithstanding the expiration of the term.

The judgment must be reversed, and cause remanded for a new trial according to law.

*By the Court.* — So ordered.