The Supervisors of La Pointe vs. O'Malley and another.

County Boards. *(1) General rule as to their powers. (2) Their power in abolishing towns, etc.*

Appeal to Supreme Court: *(3, 4) From judgment against abolished town: by whom to be taken.*

1. Under sec. 22, art. IV of the state constitution (which empowers the legislature to confer upon boards of county supervisors "powers of a local *legislative* and administrative character"), *it seems* that when any subject of legislation is entrusted to county boards by general words in a statute, they acquire a right to pass any ordinance necessary or convenient for the purpose of disposing of the whole subject so committed to them, and for that purpose have all the powers of the state legislature over that subject, unless the statute restricts the power or directs its exercise in a certain way.

2. Under sec. 670, R. S. (which empowers county boards "to set off, organize, vacate, and change the boundaries of the towns in their respective counties, subject to the limitations" afterwards prescribed), a county board has power to abolish an existing town, attach different parts of its territory to other existing towns, and provide that one of the latter shall succeed to the rights of the old town in specified property — in this case a judgment against third parties.

3. After such an ordinance has taken effect, an appeal from a judgment so transferred cannot be taken in the name of the former town, or by its attorney, in the absence of any provision to that effect in the ordinance; but, though the action does not finally abate (sec. 2800, R. S.), the town to which the judgment has been transferred must be substituted as plaintiff before any further proceedings can be had; and an appeal taken in violation of this rule is dismissed as giving no jurisdiction to this court.

4. Sec. 2801, R. S., which provides that, in case of a transfer of interest, the action may be continued by the original party, etc., has no application to a case where the original sole plaintiff has ceased to exist.

APPEAL from the Circuit Court for *Ashland* County.
The respondents (defendants) moved to dismiss the appeal.
*G. W. Cate*, for the motion.
*J. H. Knight* and *W. F. Vilas*, contra.

TAYLOR, J. 1. We are of the opinion that the motion of the respondents to dismiss the appeal in this case must be granted.

The motion papers show that on the 21st day of June, 1879, the board of supervisors of the county of Ashland duly passed and published an ordinance by which the town of La Pointe was abolished, and the territory which had theretofore been included in and constituted said town was attached to and made a part of the towns of Butternut and Ashland. This ordinance, among other things, provided that as to the judgment recovered in this action the said town of Butternut should be the successor of the town of La Pointe. The appeal in this case was taken and perfected on the 26th day of June, 1879. The notice of appeal is entitled: "The Supervisors of the Town of La Pointe, Plaintiff, vs. John O'Malley and Samuel S. Vaughn, Defendants;" and is signed by "John H. Knight, Plaintiff's Attorney."

The only questions we deem it necessary to consider upon the motion are: 1. Is the ordinance vacating and abolishing the town of La Pointe a valid ordinance? and 2. If the ordinance is a valid ordinance, could this court acquire jurisdiction over the cause by an appeal taken from the order made

in said action, in the name of the town of La Pointe, after such ordinance was passed?

We are of opinion that the ordinance was a valid ordinance, both for the purpose of vacating the town of La Pointe and also for the purpose of vesting in the town of Butternut the rights which the town of La Pointe had in the judgment in said action, and its rights in the other actions mentioned in said ordinance. Neither the counsel for the appellant nor those for the respondents question the validity of the ordinance so far as it undertakes to vacate and abolish the town of La Pointe; but the learned counsel for the respondents argues that the board of supervisors of the county had no authority to make any distribution of the property of the county, and that so much of the ordinance as undertakes to make the town of Butternut the successor of the town of La Pointe, as the owner of this judgment or of any other property of the town of La Pointe, is void. We do not think so. Section 22, article IV of the constitution, provides that "the legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local legislative and administrative character as they shall from time to time prescribe." Under this provision of the constitution, the legislature has, among other things, conferred upon the boards of supervisors of the several counties the power, *first*, "to set off, organize, vacate and change the boundaries of the towns in their respective counties, subject to limitations hereinafter prescribed, desig- nate and give names thereto, fix the time and place of holding the town meeting therein, and make all necessary orders for the preservation of the records and papers of any town which may be vacated." Subd. 1, sec. 670, R. S. 1878.

The limitations referred to in the part of the section above quoted do not in any way affect the ordinance in question. Section 672, R. S. 1878, provides that "whenever the county board shall form a new town from parts of a town or towns already organized, they shall, by their ordinance of division,

determine what portion of the indebtedness of the old town or towns shall be chargeable to the respective portions so detached to form such new town; and such new town shall pay the proportion of such indebtedness so declared chargeable to such detached portions, at such times as the same shall become payable; and for that purpose the town board of such new town shall levy a tax upon all the taxable property of such portions thereof so chargeable therewith, and the county board, in fixing the proportion of indebtedness chargeable to the detached portion, shall divide such indebtedness *pro rata*, according to the last assessment rolls of such old town." The other legislative powers conferred upon the several county boards of supervisors are all conferred in the most general terms; thus: "3. To alter, vacate or discontinue territorial or state roads within their respective counties. 4. To allow bounties for the destruction of wolves, lynxes and wild cats in their respective counties. 5. To change the name of any town or village, or person resident in their respective counties. 6. To alter or vacate any city, town or village plat, or any part thereof, or any street or alley therein, surveyed and recorded in any such county, upon petition by the proprietor or proprietors of any such city, town or village, or any part thereof or lot therein, and upon such notice by such petitioner or petitioners as is required in vacating town, city or village plats in the circuit court; provided, that no city plat, or any part thereof, or any street or alley therein, shall be altered or vacated without the consent of the common council of such city."

It is insisted by the learned counsel for the respondents, that the county boards take no power to do anything under this provision of the constitution, and these grants of the legislature thereunder, except such as is expressly and in plain terms conferred upon them, and that the county boards do not by implication take any power incident to and necessary to carry out the powers granted; and he argues that this is especially so in the case of the vacation of a town, for the reason

that the legislature has made an express direction that in such case the board "shall make all necessary orders for the preservation of the records of the vacated town." It is to be inferred that the legislature intended to prohibit the board from making any other order or orders in regard to the other property of such vacated town. We do not think this a just construction of the legislative grant of power, especially as such grant is a grant of power to legislate. Under the constitution and the grant of the legislature, the boards of supervisors of the several counties in the state become legislative bodies, having power to legislate upon such matters of a local nature as may be entrusted to them by the legislature. We are inclined to hold that when any subject of legislation is entrusted to said county boards, by general words, such boards acquire the right to pass any ordinance necessary or convenient for the purpose of disposing of the whole subject so committed to them; and that, for the purpose of disposing of such subject, they have all the powers which the legislature itself would have over the same subject, unless the legislature, in conferring such power, has restricted the power of the boards, or directed that it should be done in a certain way. And section 672, R. S. 1878, above quoted, is a restriction of the power of the county boards over the subject of the manner in which the debts of a divided town shall be paid after such division; and it is not to be inferred, because the legislature has in this particular case restricted the power of the boards as to the debts of a divided town, that such boards have no power to regulate the payment of debts or the collection of the assets of the towns vacated or altered in any other case. The sixth grant of power above quoted clearly indicates that the legislature understood that, unless the power of the boards were restricted, they would have power to do any act necessary to carry into effect the general object of the grant. This construction, we think, was clearly indicated in the opinion of this court in the case of *State ex rel. Hawes v. Pierce*, 35 Wis., 93–99. In that case

the late learned Chief Justice DIXON, in speaking of the effect of these ordinances passed by the county board, says: "The orders of the supervisors thus passed have all the force of positive law. They are in fact laws of the same character and effect as like acts passed by the legislature of the state, or as if the same acts had been so passed. As a public or general law, the order vacating the town could not be in force under the constitution until published; hence the publication required by the statute could not be dispensed with."

In the case of *Smith v. Levinus*, 8 N. Y., 472, which was an action involving the validity of an ordinance of a board of supervisors for the protection of oysters in the public waters of Queen's county, the court say: "The next objection is that the act of 1849 [the act which conferred the power to legislate upon the boards of supervisors] does not prescribe and limit the boards of supervisors, but expressly leaves the power incident to their legislation unlimited in relation to the particular subjects embraced in them. It is said that they may provide extreme and cruel penalties for a violation of their laws. It is a sufficient answer to the suggestion, that the people have found it both safe and expedient to give a pretty large discretion to the legislature, relying confidently upon the fact that the officers that the people select to make their laws will possess some prudence, have some sense of right in, be guided in some degree by their consciences in discharging their duty.

We conclude, therefore, that the ordinance was valid, both for the purpose of vacating the town of La Pointe, and for the purpose of transferring the title to the money due on the judgment in question to the town of Butternut. It follows that, at the time the appeal was taken in this case, there was no such town in existence as the town of La Pointe, and that the ownership of the judgment in question was vested in the town of Butternut.

2. Did this court acquire jurisdiction of the action by the appeal taken in the name and by the attorney of the town of

La Pointe? We think this question must be answered in the negative. Had the board of supervisors, in the ordinance, expressly provided that the actions then pending in favor of or against the town of La Pointe might be prosecuted to final judgment in the name of such town, it is possible that, in the view we have taken of the powers of the board in matters of this kind, such direction would have warranted the continued prosecution of such actions in the name of the vacated town; but we are of the opinion that the county board has not made any such order in the ordinance, and this question must be determined upon the theory that the plaintiff town was absolutely vacated and out of existence at the time this appeal was taken, and the ownership of the judgment then entirely vested in the town of Butternut.

There being no longer any such corporation in existence when the appeal was taken, and the right of action having passed to another, we are clearly of the opinion that the action as it then stood had temporarily abated. The cause of action had not abated, but had been transferred to another; but the particular action in which it had been sought to enforce the cause of action had so far abated that, according to the decisions of this court, no step could be taken in such action, after such corporation had ceased to exist, in the further prosecution of the same, until the party to whom the cause of action had been transferred was substituted as the plaintiff therein.

This court held, in the case of *Downer v. Howard*, that where the respondent had died after an appeal had been perfected, no steps could be taken therein by either party, except such as were necessary to make the representatives of the deceased party parties to the proceedings in this court, until such representatives were in fact made parties to the action. And in the same case it was held that the cause of action in that case had not abated. It is the general rule applicable to all cases where the death of a sole party takes place during the pendency of an action, though the cause of action continues in

favor of or against some one else, that nothing further can be done in the action until the person in whose favor or against whom the cause of action survives is brought before the court by some proper proceeding. *Moore v. Rand*, 1 Wis., 245; *Harteaux v. Eastman*, 6 Wis., 410; *Durbin v. Waldo*, 15 Wis., 352; *Stephens v. Magor*, 25 Wis., 533; *Tarbox v. French*, 27 Wis., 651.

In New York, where the law upon the subject of the abatement of actions when the cause of action survives, is the same as in this state, Waite, in his Practice, lays down the broad rule, that when a sole plaintiff dies pending the action, no further step can be taken in the action until a substitution of the proper representative of the deceased plaintiff has been effected; and in the case of *Reed v. Butler*, in the N. Y. Com. Pleas, 11 Abb., 128, it was held that when the plaintiff had moved to strike out the defendant's answer, and died between the hearing of the motion and the granting of the order by the court, the entry of the order striking out the answer, before an order had been obtained reviving the suit in the name of the proper party, was not only unauthorized but void.

Section 2800, R. S. 1878, does not change the law as it was before that revision. See first part of section 1, ch. 135, R. S. 1858. The meaning of section 1, ch. 135, R. S. 1858, and section 2800, R. S. 1878, is simply that, when the cause of action survives or continues in favor of some other person, the action shall not finally abate so that no further proceedings may be had in the same; but the whole statute, taken together, clearly shows that the action is temporarily abated until proceedings are taken to continue the same in the name of the proper representative of the deceased party.

We do not think this case comes within the provisions of section 2801, R. S. 1878. In order to bring a case within the provisions of that section, when the interest of the plaintiff has been transferred pending the litigation, such original plaintiff must still be *in esse*, after such transfer, in order to

permit the proceedings to continue in his name, or in the joint names of such original plaintiff and the person to whom the cause of action has been transferred. The section has no application to the case of the death of a sole plaintiff, or to a case where the sole plaintiff has ceased to exist. *Andrews, Administratrix, v. Thayer*, 30 Wis., 228. In this case, the plaintiff having ceased to exist for any purpose previous to the taking of the appeal, and the right of action having been transferred to the town of Butternut, and continued to exist in the last-named town, the action did not, under section 2800, finally abate so that no further proceedings could be taken therein; but the right to proceed further in the name of the town which was no longer *in esse*, had abated; and until an application is made to substitute the party in whom the right of action continued, as plaintiff, no further proceedings can be had therein.

The action of the attorney of the town of La Pointe, therefore, in taking this appeal, was wholly unauthorized and void, and this court has acquired no jurisdiction of the case, and the appeal must be dismissed.

*By the Court.* — Appeal dismissed.